SCHOTT, Judge.
This case arose out of an automobile accident in which the three female plaintiffs were injured as a result of the negligence of defendant’s alleged insured, Calvin Wayne Caswell. The accident occurred in New Orleans on April 17, 1974.
Caswell was a resident of Mississippi and was the named insured in a policy of automobile liability insurance issued by defendant in Mississippi sometime prior to the accident.
On December 21, 1973, defendant mailed a cancellation notice with an effective date of cancellation of January 3, 1974, to Eugene C. Caswell, residing at the same address as Calvin Wayne Caswell. The notice explained that the check for the balances due on two policies was returned to defendant by the bank. It is the efficacy of this notice of cancellation which is at issue here. The trial judge dismissed plaintiffs’ suit holding that the cancellation was effective. We reverse.
The policy contained the following provisions for cancellation:
“The company may cancel this policy in accordance with the terms hereof by written notice, addressed to the named insured and mailed to his address last known to the company or its authorized agent stating when cancellation shall be effective.”
In order to determine whether the policy was effectively cancelled in accordance with the law we must apply the law of Mississippi where the insured resided and the contract was entered into. Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972), Gros v. Comeaux, 288 So.2d 98 (La.App. 4th Cir. 1974). Applicable Mississippi law provides as follows:
“ § 83-11-5. Notice of Cancellation.
No notice of cancellation of a policy to which section 83-11-3 applies shall be effective unless mailed or delivered by the insurer to the named insured
Although this notice was not addressed and mailed “to the named insured” *1267 as required by the policy and the law the question is whether under the facts and circumstances of this case the cancellation was effective anyway.
The evidence showed that a check signed by Mrs. Betty Caswell was mailed to defendant in November, was returned by the bank as NSF, was redeposited soon thereafter, and was again returned as NSF, prompting the defendant to mail the notice of cancellation to Eugene C. Caswell. The notice referred to two policies, Calvin’s and another and to the one NSF check issued to pay for both policies and was sent to Eugene at Calvin’s address. Although the evidence does not establish the relationship among these parties the trial judge, in his reasons for judgment, found that Eugene and Betty were Calvin’s parents. Plaintiffs concede this in their brief to this Court.
The trial judge concluded as follows: “There is no doubt about it. Calvin Cas-well had not paid any premiums on his policy since May 1973. Calvin is obviously a college graduate since he is now in the professional school of dentistry. He knows he should (must) pay premiums to have liability insurance. He knows he did not pay any premium on it since May, 1973 and that the semi-annual payment was late. The notice of cancellation was not addressed to him per se, but it did list his policy on it and it was sent to his parents’ home, where the NSF check came from. The notice of cancellation was perfectly fair and valid in every respect, except that his name was not on it. The court concludes from the evidence that Calvin Caswell had personal knowledge of the cancellation and in fact knew he had no insurance; he so informed the plaintiffs shortly after the accident.”
The evidence does not support these findings. One of the three claimants testified that she saw a physician for her injuries on April 19, April 22, and April 24, but she discontinued seeing the doctor because she was told by Calvin Caswell that he had no liability insurance. That supports the conclusion that Calvin Caswell knew he had no insurance after the accident occurred but not necessarily before the accident. None of the Caswells was called as a witness so that we can only speculate that Calvin knew before the accident that his insurance premium was not paid because his mother’s check was NSF. It is equally plausible that he thought his insurance was paid for because his mother sent a check and that his mother did not tell him the check was NSF.
Had defendant complied with the provisions of its own policy and with the law of Mississippi by sending the cancellation notice to Calvin, the named insured, there would be no place for such speculation. Thus, the very purpose for the requirement in the policy and the law was frustrated by defendant’s mistake.
Our research has disclosed Chatham v. Occidental Life Insurance Co. of California, 248 Miss. 328, 158 So.2d 735 (1963) in which the court upheld a cancellation because the testimony revealed that the insured no longer intended to pay premiums on a policy of insurance and acquiesced in the cancellation of the policy although the cancellation was wrongfully made. This case indicates that the burden of proof is on the insurance company to establish a binding cancellation even though it did not follow the law and its policy to effect cancellation. In the instant case, however, defendant did not bear the burden of proof.
Having found that the policy was not effectively cancelled and therefore in full force and effect it becomes necessary to assess quantum. In August, 1974, Calvin Wayne Caswell settled his liability with all six plaintiffs for $1,000, but plaintiffs reserved their rights to proceed against defendant for the full amount of their damages. All three plaintiffs were first treated at Charity Hospital in New Orleans and incurred expenses of $20 each. All three then saw Dr. Alvin M. Cotlar for an initial examination on April 19, and they all received microtherm treatments on April 22 and 24, 1974.
As to Gladystean Porter, on the basis of his examination in which he found paraver-tebral spasms of her back, as well as X-rays, he diagnosed cervical and lumbosacral *1268 strain. He prescribed medication and heat treatments. Mrs. Porter said that her neck problem lasted for about three months and that her back was still hurting some at the time of the trial in December, 1975. However, she received no further medical treatment after her visit to Dr. Cotlar on April 24, 1974. She incurred expenses of $105 for X-rays, $35 with Dr. Cotlar and $25.75 for prescriptions which her husband, Freddie Porter, is entitled to recover.
On the basis of his examination, Dr. Cot-lar found that Carol Warren had sustained a mild back sprain. She was pregnant at the time of the accident, and she testified that she bumped her mouth on the dashboard of the automobile and had trouble with her mouth and back for about a month after the accident. Her husband, Benfus Warren, is entitled to recover her expenses of $35 with Dr. Cotlar and $27.81 for prescriptions.
As to Gladys Bryant, based on his examination and X-rays, Dr. Cotlar diagnosed a contusion of the chest and a flexion injury of the cervical spine, for which he prescribed medication and heat treatment. She testified that she still had numbness in her neck by the time of the trial but sought no further medical treatment except for one further visit to Charity Hospital she made a couple of months after the accident. She incurred expenses of $61 for X-rays, $35 with Dr. Cotlar and $27.81 for prescriptions which her husband, Earl Bryant, is entitled to recover.
In view of the paucity of medical testimony supporting the three claims each female plaintiff is entitled to modest recovery. Judgments of $750 for Mrs. Porter, $500 for Mrs. Warren and $750 for Mrs. Bryant will adequately compensate them for general damages.
Defendant is entitled to a credit for the $1,00Q paid to plaintiffs by Calvin Wayne Caswell. The release is simply a joint acknowledgment by all six plaintiffs that Caswell has paid to them jointly the $1,000 on account of all of their claims. We have concluded that the $1,000 credit should be distributed to each claimant in the same proportion as his or her claim bears to the total of the claim, so that the $1,000 of credit is distributed as follows:
Claimant Amt. Judgment Amt. Credit Gladystcan Porter $750.00 $319.00 Freddie Porter 165.75 70.00 Carol Warren 500.00 212.00 Benfus Warren 62.81 27.00 Gladys Bryant 750.00 319.00 Earl Br^ant 123.81 53.00
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of the plaintiffs for the following amounts and against defendant, State Farm Mutual Automobile Insurance Company with legal interest from date of judicial demand until paid and for all costs of the proceedings:
Gladystean Porter $431.00 Freddie Porter 95.75 Carol Warren 288.00 Benfus warren 35.81 Gladys Bryant 431.00 Earl Bryant 70.81
There is also judgment in favor of Charity Hospital of Louisiana at New Orleans on its intervention and against defendant, State Farm Mutual Automobile Insurance Company, for $60 with interest from date of judicial demand until paid, and for costs.
REVERSED AND RENDERED.